# EXHIBIT 1

## COMMISSION AGREEMENT

THIS COMMISSION AGREEMENT ("Agreement") is made and entered into this 22nd day of November, 2005, by and between Oko Universal Inc. and its affiliates Lung Tan Mechatronics, Inc and Ruoey Lung Enterprise Corp (collectively "Companies"), and Ascion, L.L.C. ("Sales Entity"), a Michigan limited liability Companies.

The Companies and Sales Entity agree as follows:

Section 1. Engagement.

1.1   Engagement. During the term hereof, Sales Entity will use its reasonable efforts to (a) make sales of, among other things, those products of Companies, including those listed on Exhibit A, attached hereto ("Products"); and (b) make introductions to, or otherwise initiate sales relationships with, potential customers of the Companies in the territories of the United States of America, Canada, and Mexico.

1.2   Independent Contractor Status. The Sales Entity and he Companies expressly acknowledge that Sales Entity will be at all times acting as an independent contractor. It is understood that the Companies shall exercise no control over the activities and operations of the Sales Entity. The Companies agree that this agreement is binding on itself and all its current and future affiliates, subsidiaries, parent companies, or any other relevant party under contract or control of the Companies or the Companies' owners, including family members of the Companies' ownership.

1.3   Exclusivity. The Companies agree that the Sales Entity will have the exclusive right to make sales of the Companies' products listed in Exhibit A to any and all Customers residing in and/or intending to sell Company products in the United States, Canada, and Mexico. For purposes of this Agreement, a "Customer" shall be any individual, partnership, joint venture, limited liability company, corporation or other similar entity residing within the territories of the United States of America, Canada, and Mexico. The Companies further agree that the Sales Entity will have the exclusive right to make sales of any and all the Companies' products to Customers to whom the Sales Entity has successfully sold products listed on Exhibit A. The Companies further agree that they will not contract any Customers, or any agents that (i) intend to do business with Customers or (ii) the Companies have reason to believe will attempt to do business with Customers or any other entities that may eventually sell the products in some fashion into the United States, Canada, and/or Mexico without the written consent of the Sales Entity, nor will the Companies utilize the services of any other sales entity or distributor in these territories without the express written consent of the Sales Entity.

Section 2. Compensation.

2.1   Commissions. The Sales Entity shall be entitled to at least (15%) of all paid invoices collected by the Companies from sales to Customers ("Commissions"), and commission may be higher in certain cases where parties agree in writing. A schedule of commission rates for the Sales Entity's Customers at the time of the execution of this agreement is listed in Exhibit B,

1

and may be amended as need be by both parties in writing to add new customers and/or alter commission rates. For purposes of this Agreement, (i) a "paid invoice" shall equal the gross amount of a paid invoice less any freight charges.

2.2     Timing. Commissions shall be paid to the Sales Entity on or before the 14th day after the product ships from the factory. Parties may agree to different payment dates in writing on a case by case basis. Payment of Commissions to the Sales Entity shall be accompanied by a statement documenting the calculations of the Commission payments.

2.3     Books and Records. At any time during the term hereof and for the five (5) year period thereafter; upon 48 hours written notice, Sales Entity shall have access to the books and records of the Companies for purposes of verifying the accuracy of the Commission payments.

### Section 3. Term and Termination.

3.1     Duration. This Agreement shall continue in full force and effect for five (5) years from the date of its execution

3.2     Termination. After the period of five (5) years from the date of execution has passed, either party may terminate the contract for any reason upon 30 days written notice.

3.3     Rights upon Termination. For a period of 210 days after the termination of this Agreement, the Companies shall continue to calculate and pay Commissions to the Sales Entity with respect to all paid invoices to any and all Customers in the United States, Canada, and Mexico, including any new Customers not introduced to the Companies by the Sales Entity, during such 210 day period. After said 180 day period is over, Companies shall continue to pay commissions to the Sales Entity for a period of five (5) years at a reduced rate of 5% of all paid invoices to any and all Customers in the United States, Canada, and Mexico, including any new Customers not introduced to the Companies by the Sales Entity

### Section 4. Confidentiality.

4.1     Companies Obligation. During the term hereof, the Companies will receive, have access to and create certain Confidential Information of Sales Entity (as used in this Section 4, Sales Entity shall mean Sales Entity and its affiliates), including, but not limited to, the names and addresses of its suppliers and customers, the names and duties of key personnel of the Sales Entity and the Sales Entity's customers and suppliers, pricing and credit information, and information regarding the operation of the Sales Entity, all of which would not be available to the Companies except for Companies' relationship with the Sales Entity. The Companies acknowledges that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of the Sales Entity, and, to preserve the Sales Entity's good will, must be kept strictly confidential and used only in the conduct of the Sales Entity's business. The Companies agrees that Companies will not use, disclose, copy, or permit the use or disclosure of any such information in any manner whatsoever except with the written consent of the Sales Entity. Upon termination of this Agreement, for any reason, the Companies shall return to the Sales Entity, any and all of the written or recorded confidential information, and all copies and reproductions thereof, described in this Section in its possession or under its control.

2

4.2   Sales Entity Obligation. During the term hereof, Sales Entity will receive, have access to and create certain Confidential Information, including, but not limited to, the names and addresses of its suppliers and customers, the names and duties of key personnel of the Companies and the Companies' customers and suppliers, pricing and credit information, and information regarding the operation of the Companies, all of which would not be available to Sales Entity except for Sales Entity's relationship with the Companies. Sales Entity acknowledges that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of the Companies, and, to preserve the Companies' good will, must be kept strictly confidential and used only in the conduct of the Companies' business. Sales Entity agrees that Sales Entity will not use, disclose, copy, or permit the use or disclosure of any such information in any manner whatsoever except in the course of and during employee's employment with the Companies, and thereafter only with the written consent of the Companies. Upon termination of this Agreement, for any reason, Sales Entity shall return to the Companies, any and all of the written or recorded confidential information, and all copies and reproductions thereof, described in this Section in its possession or under its control.

4.3   Interference. At no time during the term hereof shall the Companies directly or indirectly interfere with Sales Entity and the marketing and other efforts of Sales Entity hereunder or otherwise divert, solicit, take away, interfere with or directly contact any potential Customers of Sales Entity, including those that the Sales Entity has marketed or is in the process of marketing.

Section 5. Warranty. The Companies guaranties that its Products shall be of the kind and quality described in its public advertisements, its offerings, and sales materials provided to the Sales Entity. The Companies shall be solely responsible for the condition of the Products and shall indemnify and hold harmless the Sales Entity from any claims, losses or other costs resulting from any claims initiated by the Customers with respect to the Products, including any claims that the Products were defective or violated any patent rights or other rights of third parties. The Companies agree that any warranty claims it makes about its products are its own, and if the Sales Entity offers a warranty in selling any of the Companies' products to its Customers it is doing so with the consent of the Companies. The Companies will provide signed copies of its warranties for various products and Customers to the Sales Entity as proof. The Companies agrees that during the term hereof the Companies shall use its best efforts to collect timely all invoices billed to all Customers.

Section 6. Miscellaneous.

6.1   Compliance with Laws. In the performance of this Agreement, each party will comply with all applicable laws, regulations, rules, orders and other requirements of governmental authorities having jurisdiction.

6.2   No Waiver. The failure of either party to insist upon or enforce strict performance by the other of any provision of this Agreement or to exercise any right, remedy or provision of this Agreement will not be interpreted or construed as a waiver or relinquishment to any extent of such party's right to consent or rely upon the same in that or any other instance; rather, the same will be and remain in full force and effect.

6.3   Entire Agreement. This Agreement constitutes the entire agreement, and supersedes any and all prior Agreements, between the Companies and Sales Entity. No amendment,

3

modification or waiver of any of the provisions of this Agreement will be valid unless set forth in a written instrument signed by the party to be bound thereby.

6.4 Notices. Any notice required or desired to be given under this Agreement shall be deemed given if in writing via hand delivery or sent by certified mail or federal express (or like carrier) to the address set forth below each party's signature below, or at such other address as a party have been provided notice of in writing. Notices shall deemed given upon the earlier of actual receipt or three (3) days after mailing.

6.5 Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Michigan applicable to agreements made and to be performed entirely with such state. Venue for any matter relating hereto shall be in Oakland County, Michigan.

6.6 Attorneys' Fees. In the event of any litigation, the substantially prevailing party shall be entitled to recover from the other party all of its attorneys' fees and other expenses incurred in connection with such litigation and any appeal therefrom or in connection with any bankruptcy action.

6.7 No Assignment. This Agreement is not assignable by Companies except by operation of law or the written consent of Sales Entity.

6.8 Counterparts/Facsimile Signatures. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures shall be deemed originals for purposes hereof.

6.9 Headings. The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the interpretation of this Agreement.

6.10 Severability. Unless otherwise provided herein, if any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Dated: 11-22-05

**COMPANIES:**

[Oko Universal, Inc.]

By: Shi Long Tan
Its: Owner
Signature: [signature]

4

Address: 17 Lukung S. 2nd Rd., Changpin Ind. Dist. Lukang Town, Changhua Hsien, Taiwan 505, ROC

[Ruoey Lung Enterprise Corp.]

By: _____Sophia Yang_____
Its: _____Owner_____
Signature: _____[signature]_____

Address: 17 Lukung S. 2nd Rd., Changpin Ind. Dist. Lukang Town, Changhua Hsien, Taiwan 505, ROC

[Lung Tan Mechatronics Industrial LTD.]

By: _____Shi Long Tan_____
Its: _____Owner_____
Signature: _____[signature]_____

Address: Silver Lake Industrial Estate Xiegang, Dongguan, Guangdong, China

**SALES AGENT:**

[Ascion, L.L.C.]

By: _____Martin Rawls-Meehan_____
Its: _____Member_____
Signature: _____[signature]_____

Address: 31200 Stafford St. Beverly Hills, MI 48025

5

OkuContract1

EXHIBIT A

PRODUCT LIST

All adjustable bed frames, adjustable bed bases, and adjustable mattresses or similar products manufactured by Oko Universal Inc., Lung Tan Mechatronics, Ruoey Lung Enterprise Corp., and/or any of their affiliates.

COMPANIES:

[Oko Universal, Inc.]

By: _____Shi Long Tan_____
Its: _____Owner_____
Signature: _____[signature]_____

Address: 17 Lukung S. 2nd Rd., Changpin Ind. Dist. Lukang Town, Changhua Hsien, Taiwan 505, ROC

[Ruoey Lung Enterprise Corp.]

By: _____Sophia Yang_____
Its: _____Owner_____
Signature: _____[signature]_____

Address: 17 Lukung S. 2nd Rd., Changpin Ind. Dist.
Lukang Town, Changhua Hsien, Taiwan
505, ROC

[Lung Tan Mechatronics Industrial LTD.]

By: _____Shi Long Tan_____
Its: _____Owner_____
Signature: _____[signature]_____

Address: Silver Lake Industrial Estate
Xiegang, Dongguan, Guangdong, China

SALES AGENT:

[Ascion, L.L.C.]

By: _____Martin Rawls-Meehan_____
Its: _____Member_____
Signature: _____[signature]_____

Address: 31200 Stafford St.
Beverly Hills, MI 48025

# EXHIBIT B

COMMISSION SCHEDULE – The companies listed on this schedule are listed by their generally recognized business names. It is understood that any and all of their subsidiaries, business affiliates, agents, and other such parties be included as entities for which the commission rate agreed to below will apply..

Bob's Discount Furniture – 15%

Lady Americana – 15%

Industrial Rubber – 27%

REM Furniture – 20%

Bed Mart – 20%

Boyd Specialty Sleep – 20%

COMPANIES:

[Oko Universal, Inc.]

By: _____ Shi Long Tan _____
Its: _____ Owner _____
Signature: _____

Address:  17 Lukung S. 2nd Rd., Changpin Ind. Dist.
Lukang Town, Changhua Hsien, Taiwan
505, ROC

[Ruoey Lung Enterprise Corp.]

By: _____ Sophia Yang _____
Its: _____ Owner _____
Signature: _____

Address: 17 Lukung S. 2nd Rd., Changpin Ind. Dist.
Lukang Town, Changhua Hsien, Taiwan
505, ROC

[Lung Tan Mechatronics Industrial LTD.]

By: _____Shi Long Tan_____
Its: _____Owner_____
Signature: _[signature]_

Address: Silver Lake Industrial Estate
Xiegang, Dongguan, Guangdong, China

**SALES AGENT:**

[Ascion, L.L.C.]

By: _____Martin Rawls-Meehan_____
Its: _____Member_____
Signature: _[signature]_

Address: 31200 Stafford St.
Beverly Hills, MI 48025